UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOHN SACCO,

                      Plaintiff,                    **COMPLAINT**

    v.                                      Civil Action No. _____

ROBERT F. KENNEDY, JR.,
SECRETARY OF THE UNITED STATES      Medicare Appeals Council Number:
DEPARTMENT OF HEALTH & HUMAN      M-25-2212
SERVICES;

WELLCARE HEALTH PLANS, INC.; and      OMHA Appeal Number:
                                                 3-14766920788
CENTENE CORPORATION,

                      Defendants.

_____

Plaintiff, John Sacco, respectfully states:

### I. INTRODUCTION

      Plaintiff John Sacco suffers from Mitochondrial Myopathy, a chronic disease affecting the mitochondria in the cells, which causes debilitating symptoms. Mr. Sacco has health insurance through Wellcare, which provides coverage of medications and medication compounds as required by their policy and by Medicare Part D. Mr. Sacco has been prescribed a medication compound, which under his policy with Wellcare and Medicare's rules and regulations, should be covered. Wellcare has refused to provide Mr. Sacco coverage of the compound, and Medicare has refused to require Wellcare to provide such coverage. Plaintiff brings this action to require Medicare to order Wellcare to take whatever steps are necessary to provide coverage for his prescribed compounded medication.

In the alternative, if it is found that Medicare's regulations and policies do not require Wellcare to take whatever steps are necessary to provide coverage for her prescribed medication, then Plaintiff requests that this Court declare those regulations and policies be found to be invalid, to adopt new rules for the coverage of medication compounds, and that it order Medicare to order Wellcare to take whatever steps are necessary to provide coverage for her prescribed compounded medication.

Finally, Plaintiff brings state law for specific performance against Wellcare and Centene based upon their breaches of contract, breach of their covenant of good faith and fair dealing, and other claims as are specified herein.

## II. THE PARTIES

1. Plaintiff John Sacco is a competent adult individual residing in the Town of Amherst, County of Erie in the State of New York.

2. The Defendant Robert F. Kennedy, Jr. is the Secretary of the United States Department of Health & Human Services. (hereinafter referred to as "the Secretary").

3. Medicare is a federal health insurance program that is run by the Centers for Medicare Services ("CMS"), which is part of the United States Department of Health and Human Services.

4. Upon information and belief, Defendant Centene Corporation (hereinafter "Centene") is a publicly traded managed care company that issues and administrates various health plans with its principal place of business located at 7700 Forsyth Boulevard, St. Louis, Missouri.

5. Upon information and belief, WellCare Health Plans, Inc. (hereinafter "Wellcare") is a corporation organized under Florida law with its principal place of business located at 8725 Henderson Road, Tampa, Florida. Wellcare is a wholly owned subsidiary of Centene.

6. All references to Wellcare in this complaint shall mean Wellcare and Centene.

### III. JURISDICTION AND VENUE

7. The jurisdiction of this Court over the Secretary is invoked pursuant to 28 U.S.C.§1331, 42 U.S.C. § 405.1136(b)(1) and 42 U.S.C. § 1395ff(b)(1)(A) to review a decision of the United States Department of Health and Human Services denying her Medicare Part D coverage of a mitochondrial compound, which her treating physician had prescribed for treatment of Mitochondrial Myopathy.

8. The action against the Secretary is an appeal from a portion the "Stipulated Decision" of an Administrative Law Judge of the Office of Medicare Hearings and Appeals dated February 21, 2025 (Exhibit "A"), and the decision of the Medicare Appeals Council dated August 6, 2025. (Exhibit "B").

9. The cost of the mitochondrial compound that Plaintiff sought insurance coverage for costs over $650.00 per month.  As Plaintiff's prescription calls for him to take his compound indefinitely.  the amount in controversy is more than $1,900.00.

10. This Court has supplemental jurisdiction over Plaintiff's state claims against Wellcare and Centene pursuant to 28 U.S.C.§1367(a) in that the state claims are so related to the claims that give this Court original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

11. Venue is proper in this District under 28 U.S.C. § 1391(b)(2), because a substantial portion of the events giving rise to this action arose in this District.

## IV.  FACTUAL ALLEGATIONS

12. For many years, Plaintiff has suffered from a medical condition known as Mitochondrial Myopathy, a rare condition in which the mitochondria do not function properly.

13. Plaintiff's Mitochondrial Myopathy causes him to suffer from multiple symptoms, including but not limited to extreme fatigue, joint pain, muscle pain, vision impairment, weakness, brain fog, migraine headaches, slow to heal, compromised immune system, food allergies, gastrointestinal problems, and inflammation.

14. At all times relevant herein, Plaintiff has been a recipient of Medicare benefits, including Part D prescription coverage through WellCare.

15. Plaintiff and Wellcare entered into a contract in which Wellcare agreed to provide health insurance coverage to Plaintiff for certain drugs and drug compounds as specified in the contract and as required by Medicare Part D.

16. In the contract, Plaintiff agreed to pay insurance premiums for the agreed upon insurance coverage.

17. At all times relevant herein, Plaintiff paid all of the insurance premiums agreed to by the parties.

18. The contract provided, both explicitly and implicitly, that Wellcare would comply with all Medicare rules and regulations, and with any orders or directives issued by Medicare.

19. Carnitine is a substance that is stored in the body and plays a critical role in energy production.

20. A major cause of Mitochondrial Myopathy is a deficiency in carnitine.

21. Levocarnitine is a drug that contains carnitine.

22. Levocarnitine in tablet form is on the drug formulary of Wellcare and Medicare's Part D.

4

23. At all times relevant herein, Plaintiff was enrolled in a Medicare Part D prescription drug plan sponsored by Wellcare.

24. Plaintiff is treated for her Mitochondrial Myopathy by Julian L. Ambrus, Jr., M.D., a world-renowned immunologist.

25. In or about August of 2024, Dr. Ambrus prescribed a compounded drug, consisting of Levocarnitine 200mg, Creatine 1000mg, Coenzyme q10 200 mg, Folic Acid 2 mg, alpha lipoic acid 150 mg, and N-acetylcysteine 500 mg, with each ingredient taken four times per day to treat his condition. The prescription specifically stated that the Levocarnitine component of the compound was to be supplied by grinding up a 330 mg tablet and including 200 mg of the resulting powder in the compound. This compound is known as the "Mito Mix" and will be referred to as "Mito Mix" or "the compound" hereinafter.

26. The Mito Mix has been proven in clinical studies to be an effective treatment for Mitochondrial Myopathy.

27. The cost of the Mito Mix is more than $650.00 per month.

28. There are no less expensive treatments for Plaintiff's condition that are as effective as the Mito Mix to treat Plaintiff's Mitochondrial Myopathy.

29. Plaintiff presented his prescription to his pharmacy in or about August of 2024.

30. Plaintiff's pharmacy presented the prescription to Wellcare seeking coverage of the Mito Mix in accordance with the terms of his Part D prescription plan with them.

31. Wellcare did not issue an approval or declination letter relative to Plaintiff's request for coverage of the compound as they are required to do under the contract for insurance coverage and by the rules and regulations issued by Medicare.

32. On October 29, 2024, Plaintiff filed a grievance against Wellcare requesting that a coverage determination be made.

33. On November 17, 2024, Wellcare referred Plaintiff's grievance and coverage determination issues to C2C Innovative Solutions, Inc., an independent contractor that Medicare contracts with to adjudicate disputes in the Medicare appeals process.

34. On November 17, 2024, C2C Innovative Solutions, Inc. denied Plaintiff's request for coverage of the Mito Mix on the merits.

35. On January 17, 2025, Plaintiff filed a Request for a Hearing before an Administrative Law Judge, thereby appealing the decision of C2C Innovative Solutions, Inc.

36. On February 19, 2025, an administrative hearing was held before ALJ Kevin McCormick on Plaintiff's appeal.

37. During the hearing, a representative for Wellcare conceded that Levocarnitine, one of the ingredients in the compound, was a covered drug under the Medicare formulary.

38. During the hearing, a representative of Wellcare conceded that Levocarnitine is accepted as an appropriate drug for the treatment of carnitine deficiency, which Plaintiff suffers from.

39. At the hearing an agreement was reached between Plaintiff and Wellcare. The agreement was accepted by the ALJ and incorporated in his February 21, 2025 "Stipulated Decision." In relevant part, the stipulation was a follows:

> [t]he Plan must cover and issue payment for the Levocarnitine component but is not required to cover the non-Part D drug components because they are not Part D drugs. However, the Plan must prohibit the compounding pharmacy from balance billing the Appellant for these components. To the extent the compounding pharmacy balance bills the Appellant for the non-Part D components, ***the Plan is obligated to resolve the billing problem with the pharmacy.*** (Emphasis added).

40. After the issuance of the February 21, 2025 Stipulated Decision, Wellcare refused to cover any portion of the Mito Mix compound, and did not resolve any billing problem with the any compounding pharmacy as they had agreed to do, and as they were ordered to do by the Administrative Law Judge.

41. After the issuance of the ALJ's decision, Plaintiff's counsel engaged in multiple telephone calls with representatives of WellCare in an attempt to effectuate the stipulated decision of February 21, 2025. Each time counsel spoke to a different representative, each of whom gave different information.

42. As it became clear that the matter would not be resolved within the sixty-day deadline to appeal the ALJ's stipulated decision, Plaintiff timely requested an extension of time to request review of the February 21, 2025 ALJ decision.

43. On July 2, 2025, the Medicare Appeals Council granted Plaintiff a 30-day extension to request review of the February 21, 2025 ALJ Stipulated Decision.

44. Not only did Wellcare refuse to cover the compound after the ALJ's decision, they refused to issue any written notice of decision declining coverage.

45. After months of discussions with various representatives of Wellcare attempting to gain their compliance with the stipulated decision, Plaintiff filed a written grievance with Wellcare on July 14, 2025 demanding that they provide insurance coverage of the compound and/or issue a coverage determination. Wellcare did neither, and has not responded in any way to Plaintiff's grievance.

46. Medicare's rules and regulations do not provide for any means to appeal or otherwise remedy a Plans refusal to respond to a properly filed grievance against them.

47. On July 18, 2025, Plaintiff filed a request for review of the February 21, 2025 stipulated decision, and asked that in the alternative, the decision be either reopened or revised. (See Exhibit C annexed hereto).

48. In the request for review, Plaintiff, among other things, indicated that if the Medicare Appeals Council do not require the Plan and/or pharmacy to cover the costs of the non-Part D ingredients to the compound, that he reserved the right to seek a modification or elimination of the applicable rules and regulations in manner that will facilitate full coverage.

49. On August 6, 2025, the Medicare Appeals Council upheld the ALJ's decision and declined to reopen or revise any portion of the decision. (See Exhibit A attached hereto).

50. There is no other FDA approved drug or Medicare Part D drug that replicates the medicinal effect of the Mito Mix.

51. That multiple other individuals in Western New York are afflicted with Mitochondrial Myopathy and have had similar experiences with different insurance companies in attempting to obtain coverage and payment for the compound.

52. Upon information and belief, if there are multiple individuals having to wait months or even years to possibly obtain coverage for this compound, there must be hundreds if not more individuals experiencing the same difficulties nationally.

53. Plaintiff does not challenge the portion of the stipulated decision that found that, 1) the Plan must cover and issue payment for the Levocarnitine component, 2) that the Plain must prohibit balance billing Plaintiff for the non-Part D drug components; or that 3) the Plain is obligated to resolve any billing problems with the pharmacy.

54. Plaintiff objects to the decision of the Appeals Council that it does not have power to enforce the decision of the stipulated decision.

55. In the alternative, if it is determined that the current rules and regulations of Medicare do not allow for or require enforcement of its orders against Part D plans, it is requested that this court issue an order directing Medicare to enforce the stipulated decision and invalidate any rules or regulations that prevent them from doing so.

## V.   CAUSE OF ACTION AGAINST SECRETARY OF THE UNITED STATES DEPARTMENT OF HEALTH & HUMAN SERVICES

56. Part D of Medicare provides prescription drug coverage to Medicare beneficiaries enrolled in the program.

57. Medicare has enacted regulations that govern the rights of insurance companies ("plan sponsors") and beneficiaries. 42 U.S.C.§120(b).

58. Medicare requires plan sponsors that participate in the Medicare Part D program to adopt a formulary, which contains all of the drugs that it will cover. 42 U.S.C.§120 et al; Medicare Prescription Drug Benefit Manual ("MPDBM").

59. By regulation and Medicare policy, plan sponsors are required to provide coverage for all medications on the formulary for any medically accepted indication or the use of which is supported by one or more citations in the Medicare approved compendia. 42 U.S.C. §1396r-8(k)(6); MPDBM §10.6.

60. The use of a drug for a "medically accepted indication" is colloquially described as "on-label" use.

61. The Medicare approved compendia, the prescribing information provided by the manufacturer, and multiple peer reviewed medical studies endorse the use of Levocarnitine to treat carnitine deficiency, a characteristic of those afflicted by Mitochondrial Myopathy.

62. Multiple peer reviewed medical studies establish the efficacy of the Mito Compound to treat Mitochondrial Myopathy.

9

63. 42 U.S.C.§423.120(d) and the MPDBP Ch. 6 §10.4 provide that with respect to compounded medications:

    A. Only compounds that contain at least one ingredient that independently meets the definition of a Part D drug may be covered under Part D. For purposes of this paragraph (d) these compounds are referred to as Part D compounds.

    B. For any non-Part D ingredient of the Part D compound, the Part D sponsor's contract with the pharmacy must prohibit balance billing the beneficiary for the cost of any such ingredients.

    C. That the plan sponsor must cover the component of the compound that is an on-label Part D drug.

64. 42 U.S.C.§423.120(d)(2) states that the plan sponsor must "[e]stablish consistent rules for beneficiary payment liabilities for both the ingredients of the Part D compound that independently meet the definition of a Part D drug and non-Part D ingredients.

65. 42 U.S.C.§423.120 was enacted on April 15, 2011 (effective June 11, 2011), after consideration of comments by interested parties on the regulation as proposed.  In enacting the regulation, the Center for Medicare and Medicaid Services (CMS) addressed the comments and concerns of various stakeholders, and provided rationales for the final regulation they issued. 76 FR 21432.[1]  In response to comments regarding coverage and billing for the non-Part D ingredients in a Part D compound, CMS stated:

> Based on the comments, we have reconsidered this issue, and we now agree with the commenters that recommended that Part D sponsors not allow their network pharmacies to balance bill beneficiaries above and beyond the Part D beneficiary cost-sharing specified on the paid response returned by the Part D sponsor on the pharmacy claim. The proposed policy would have allowed for balance billing based upon the premise that only a portion of some Part D compounds are covered because non-Part D ingredients included within the compound might not be directly paid for by the Part D sponsor and cannot be reported as Part D ingredient costs on PDEs[2], and we recognize that some commenters are

---

[1] https://www.federalregister.gov/documents/2011/04/15/2011-8274/medicare-program-changes-to-the-medicare-advantage-and-the-medicare-prescription-drug-benefit
[2] PDE is an acronym for "Prescription Drug Event".

10

> concerned that pharmacies simply will stop preparing Part D compounds if they believe they are insufficiently compensated for that service.
>
> However, after considering the comments, we believe a better approach to this issue is one that is more straightforward for beneficiaries, Part D sponsors, and pharmacies. Thus, we are amending our final regulation to prohibit balance billing for non-Part D ingredients of Part D compounds.
>
> Further, in response to concerns about pharmacy reimbursement, we wish to clarify that Part D sponsors and pharmacies are able to negotiate prices for covered Part D compounds that account for non-Part D ingredients. We believe they can accomplish this in one of two ways: (1) Part D sponsors can directly pay for non-Part D ingredients on the pharmacy claim (without charging the beneficiary or reporting these costs on the PDE to CMS); or (2) Part D sponsors can reimburse pharmacies for these ingredients as part of the dispensing fee. In addition, we note that, in our view, our definition of dispensing fees supports the proposition that pharmacies already are reimbursed by the plan for those ingredients of a Part D compound that do not independently meet the definition of a Part D drug. For these reasons, we further do not believe that the billing and payment of specific line items on a pharmacy claim for a Part D compound determines whether a Part D sponsor has paid the full negotiated price for the entire Part D compound. Instead, we believe that Part D sponsors and pharmacies have negotiated how Part D compounds are priced in general and that such prices adequately account for any non-Part D ingredients, which usually account for a small portion of the overall cost, regardless of how an individual paid claim represents payment for individual ingredients. Consequently, because the plan's payment to the pharmacy represents payment in full, there are no remaining unpaid amounts to be balance billed. We believe this policy appropriately protects beneficiaries by ensuring that they only pay Part D negotiated prices for Part D compounds without interfering with the ability of pharmacies to negotiate prices that provide adequate reimbursements for Part D compounds. Based on the comments, we are revising § 423.120(d) to prohibit Part D sponsors from balance billing (or permitting pharmacies to balance bill) beneficiaries for non-Part D ingredients in Part D compounds. 76 FR 21523-21524.

66. Upon information and belief, Wellcare has not agreed with any other pharmacy to either pay for the Part D ingredients or the non-Part D ingredients of the compound either by way of reimbursement, or as a dispensing fee to induce them to fill the prescribed compound.

67. Upon information and belief, Wellcare illegally declined to cover the medication in its entirety when it was submitted by Plaintiff's Pharmacy, and even declined to cover the Levocarnitine component of the compound.

11

68. Upon information and belief, Wellcare's Evidence of Coverage, the statement of Wellcare's policies filed with CMS, obligate them to pay for the Part D component of the compound, and resolve with a compounding pharmacy their respective shares of the cost of the non-Part D ingredients.

69. Plaintiff has been unable to obtain insurance coverage for the Mito Mix, which has resulted in a significant deterioration of his Mitochondrial Myopathy and his ability to function.

70. The official commentary provided by CMS in connection with 42 C.F.R.§423.120(d), the relevant regulation stating the rules for coverage of Part D drug compounds, makes clear that one of the primary goals in their enactment was to ensure that beneficiaries are able to obtain insurance coverage of those compounds.

71. Plaintiff agrees with, and does not challenge CMS's policies, rules or regulations regarding drug compounds that that require plan sponsors to 1) pay for the Part D drug(s) in the compound, and 2) to resolve with the compounding pharmacy their respective shares of the cost of the non-Part D components of the compound, and 3) that in no event is the beneficiary to be billed for those costs, except for an appropriate copay.

72. Plaintiff agrees and does not challenge that definition of Part D drug compounds as stated in 42 C.F.R.§423.120(d)(1) is consistent with the statutory scheme enacted by Congress in Part D of Medicare and other relevant statutes.

73. Plaintiff challenges portion of CMS regulations, rules and policies that provide no enforcement mechanism to enforce a plan sponsors obligations thereunder.

74. Notwithstanding the laudable goal of CMS of providing insurance coverage to beneficiaries for Part D drug compounds, the regulations they ultimately adopted fail to accomplish its stated purpose.

75. The regulatory framework enacted by CMS is insufficient and does not ensure that beneficiaries, such as the Plaintiff, are able to obtain coverage of Part D drug compounds.

76. With respect to non-compounded Part D medications, the process is simple. The pharmacy fills a prescription, submits it to the plan sponsor for coverage, and the plan sponsor pays a sufficient sum of money to the pharmacy to make it profitable for them to fill the prescription.

77. The non-Part D ingredients in Plaintiff's compound, and many other compounds, can be very expensive, and even more expensive than the Part D drug they are compounded with.

78. The regulatory framework enacted by CMS with respect to coverage of Part D compounds are convoluted and not simple. A pharmacy is asked to fill a prescription, submit it for coverage, and hope that they can, as stated in the Medicare Appeals Council Decision, "resolve the billing problem" with a compounding pharmacy.

79. Upon information and belief, compounding pharmacies may understand that that they will not be compensated sufficiently to prepare the compound, and will, in fact, lose money if they fill it.

80. CMS's regulations, rules and policies fail to take into account the fact that the non-Part D ingredients can be very expensive and that pharmacies will be reluctant or unwilling to prepare Part D drug compounds.

81. 42 C.F.R.§423.120(d) and MPDBM §10.6.are inconsistent with the goals of Medicare Part D, and do not accomplish their stated purpose, to wit: To provide insurance coverage to Medicare beneficiaries for Part D drug compounds.

82. In cases, such as this case, where it has been determined that a Plan sponsor must cover a Part D drug compound, the regulations do not provide a means for enforcement of such a determination.

83. The regulations provide for the filing of a grievance against a Plan sponsor for failing to comply with applicable rules, regulations and orders of Medicare, but do not provide recourse to a beneficiary if they disagree with the outcome of the grievance, or if the Plan sponsor never responds to the grievance.

84. In *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412, 144 S. Ct. 2244, 2273 (2024), the United States Supreme Court held that Courts must exercise independent judgment in deciding whether an agency acted within the statutory delegation for rulemaking.

85. The *Loper* Court further found that Courts need not defer to agency regulations when the Courts judgment is that they are inconsistent with a statute, nor should they defer simply because a statute is ambiguous.

86. By reason of the foregoing, this Court should not defer to the regulations and policies of CMS, which have resulted in Plaintiff's inability to obtain insurance coverage for her Part D. drug compound.

### VI. CAUSES OF ACTION AGAINST WELLCARE AND CENTENE FOR BREACHES OF CONTRACT AND SPECIFIC PERFORMANCE

87. By reason of the foregoing, this Court should not defer to the regulations and policies of CMS, which have resulted in Plaintiff's inability to obtain insurance coverage for her Part D. drug compound.

88. Plaintiff incorporates herein by reference each and every prior allegation and fact as though fully restated and realleged.

89. The parties health insurance agreement and applicable federal and state law required Wellcare and the compounding pharmacy to negotiate their respective liabilities for the

uncovered components of the Mito Cocktail, and to not bill Plaintiff for any of portion of the Mito Cocktail.

90. Wellcare failed to pay for or cover any portion of the Mito Cocktail.

91. By reason of the foregoing, Wellcare breached its insurance contract with Plaintiff, and violated federal and state law.

92. At the hearing in this matter, Wellcare agreed with Plaintiff to cover the Mito Mix in accordance with the terms later stated in the ALJ's stipulated decision.

93. Wellcare's refusal to cover any portion of the Mito Mix after the stipulated decision is an additional breach of contract.

94. When Wellcare entered into their written health insurance contract with Plaintiff, and when they agreed to the terms as laid out in the stipulated decision, they owed Plaintiff a duty to perform under those contracts or agreements in accordance with the covenant of good faith and fair dealing established in the common law of the State of New York.

95. Wellcare's actions as described herein constituted breaches of contract and of the covenant to execute their contracts or agreements with Plaintiff in good faith, and to fairly deal with Plaintiff.

96. Wellcare's breaches of contract described in this complaint were done in bad faith.

97. As a result of Wellcare's breaches described above, Plaintiff suffered physical symptoms, including but not limited to episodic severe fatigue, muscular pain, and other symptoms as a result of not having the benefit of his Mito Cocktail.

98. At all times relevant herein, Plaintiff has substantially performed his obligations under the contracts and agreements he made with Wellcare.

99. An award of damages would not furnish a complete and adequate remedy to Plaintiff, and Plaintiff has no adequate remedy at law.

100. By reason of the foregoing, Wellcare should be ordered to specifically perform on their contracts and agreements with Plaintiff.

101. Centene is vicariously liable for all of the actions of Wellcare described in this complaint.

**PRAYER FOR RELIEVE AGAINST DEFENDANT SECRETARY OF THE UNITED STATES DEPARTMENT OF HEALTH & HUMAN SERVICES**

 **WHEREFORE**, Plaintiff prays that this Court:

1. Reverse and remand the Medicare Appeals Council decision of February 21, 2025.

2. Strike and invalidate the scheme provided in Medicare's regulations and policy statements, and order that in this case, and in the future:

    A. Plan sponsors shall pay for all ingredients in a Part D compound, and either absorb the cost of the non-covered ingredients, or pay the compounding pharmacy for those costs, and account for the cost of the non-covered ingredients as a dispensing fee.

    B. Medicare shall adopt new regulations consistent with this decision.

3. Order that upon remand, CMS should order Wellcare to identify a compounding pharmacy that will prepare the Mito Mix and provide it to Plaintiff within 60 days of the judgment of this Court.

4. Order that CMS should order Wellcare to adjust its reimbursement or dispensing fee to an amount that will induce a compounding pharmacy to prepare the Mito Mix and agree to submit it to Wellcare for coverage.

5. Order CMS to order that neither Wellcare nor the compounding pharmacy may balance bill the Plaintiff for any uncovered cost of the Mito Mix compound.

6. Reverse and remand this matter solely for the purpose of effectuating the decision of this Court and direct that Plaintiff's Mito Mix, in its entirety, be covered under her Medicare Part D health care plan pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1395ff(b)(1)(A), with no balance billing to Plaintiff.

7. Award attorney's fees under the Equal Access to Justice Act, 26 U.S.C. § 2412, on the grounds that the Secretary's action in this case was not substantially justified; and

8. Order such other and further relief as the Court deems just and proper.

**PRAYER FOR RELIEVE AGAINST DEFENDANTS WELLCARE AND CENTENE**

**WHEREFORE**, Plaintiff demands judgment against Defendants Wellcare and Centene as follows:

- A. A determination that Plaintiff is entitled to specific performance of its contracts with Defendants Wellcare and Centene and ordering that within thirty days of judgment Wellcare and Centene:

    1. Issue payment to an appropriate compounding pharmacy for the Levocarnitine component of the Mito Mix subject to an appropriate copay in accordance with the rules and regulations of Medicare.

    2. Reach agreement with a compounding pharmacy regarding the amount of money defendants will reimburse them for the cost of the non-Part D ingredients of the compound and for their compounding services.

    3. Comply in all respects with the stipulated decision dated February 21, 2025.

- B. A determination that Wellcare and Centene denied or constructively denied Plaintiff's request for coverage of the compound in bad faith, and that as such, they are liable to pay Plaintiff's attorneys fees incurred in this action.

- C. That Plaintiff be awarded attorneys fees, costs, and disbursements against Wellcare and Centene in an amount that the Court deems just and equitable.

- D. For such other legal and equitable relief as the Court deems proper.

Dated: September 22, 2025

Respectfully submitted,

/s/ Kenneth R. Hiller_____
Kenneth R. Hiller, Esq.
HillerComerford Injury and Disability Law PLLC
Attorneys for Plaintiff
6000 N. Bailey Ave., Suite 1A
Amherst, New York 14226
716-564-3288
khiller@hillercomerford.com